UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Darrel Wadford, | ) | C/A No. 2:24-cv-00006-RMG-MHC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| South Carolina Public Service Authority | ) | |
| d/b/a Santee Cooper; Hunter Driggers; Matt | ) | |
| Fitts; Brian Lynch; Hope Saul; Jay Scurry; | ) | |
| Richard Wimberly; and Noel Ruppert, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff originally filed this employment discrimination action in state court. ECF No. 1-1. Defendant South Carolina Public Service Authority d/b/a Santee Cooper ("Santee Cooper") removed it to this Court on January 3, 2024. ECF No. 1. Upon joint motion of the parties, the Court stayed the case for 60 days pending an early mediation. ECF Nos. 6 & 7. The stay expired on March 18, 2024. ECF No. 7. With leave of the Court, Plaintiff filed a Second Amended Complaint on June 5, 2024. ECF Nos. 40, 41.

Presently before the Court for disposition are three Motions to Dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure: (1) a Motion for Partial Dismissal filed by Defendant Santee Cooper, ECF No. 43 (the "Santee Cooper Motion"); (2) a Motion filed by Defendant Matt Fitts, ECF No. 45 (the "Fitts Motion"); and (3) a Motion filed by Defendants Hunter Driggers, Brian Lynch, Hope Saul, Jay Scurry, Richard Wimberly, and Noel Ruppert, ECF No. 44 (the "Remaining Defendants' Motion"). Plaintiff filed Responses in Opposition to the

1

Motions, ECF Nos. 54–56, and Defendants filed Replies, ECF Nos. 57–59. The Motions are ripe for review.[1]

## PLAINTIFF'S ALLEGATIONS

Accepting the truth of the allegations in Plaintiff's Amended Complaint and viewing all inferences in the light most favorable to Plaintiff, *see E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011), the facts, for purposes of ruling on the Motions to Dismiss, are as follows.

### A. Plaintiff's employment with Santee Cooper

Plaintiff alleges that he is over the age of forty and was an employee of Santee Cooper for over 18 years. ECF No. 41 at ¶¶ 8–9, 40–43. During his employment, Plaintiff went back to school to obtain further education and licenses in order to obtain promotions within the company. *Id.* at ¶¶ 47, 51. Plaintiff was promoted to the position of Manager of Water Systems, in which he supervised two Santee Cooper plants. *Id.* at ¶¶ 52–53.

In 2023, Plaintiff reported one of his subordinates, Jay Scurry, for discriminating against another individual based on race. *Id.* at ¶ 65. Plaintiff asserts that he was retaliated against for making this discrimination report. *Id.* at ¶ 66.

Sometime in 2022 or 2023, Plaintiff began to suffer from severe depression, but he never missed a day of work or requested an accommodation. *Id.* at ¶¶ 57–60. Plaintiff alleges that he witnessed differential treatment of several employees due to their depression and anxiety, including one time that supervisor Brian Lynch told another employee to "get his depression and

---

[1] This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C. As these Motions are dispositive, this Report and Recommendation is entered for review by the District Judge.

anxiety straight because it was not a disability [and] he was going to be terminated and lose his retirement." *Id.* at ¶ 73. By the end of 2022 and beginning of 2023, Plaintiff "was subjected to constant commentary regarding his depression," including numerous comments from Lynch. *Id.* at ¶¶ 74–77. As a result, Plaintiff requested a meeting with Human Resources (HR) to address issues regarding morale in the two plants and to discuss issues regarding Plaintiff's own employment and how he was being treated by others based on his depression. *Id.* at ¶ 78. HR ignored his requests. *Id.* at ¶ 79.

On March 1, 2023, Plaintiff was informed that there was a promotion coming up but that the promotion would be given to a younger woman with significantly fewer qualifications and less supervisory experience than Plaintiff. *Id.* at ¶ 81.

On March 8, 2023, Plaintiff formally notified Santee Cooper that he was being subjected to a hostile work environment based on his disability and age, and he specifically complained that "his employees were attempting to create paranoia to complicate his depression and anxiety." *Id.* at ¶ 82. After making this formal complaint, Plaintiff received his first needs improvement evaluation in eighteen years of employment, and he was demoted to Manager of Moultrie Operations, without justification or notification. *Id.* at ¶¶ 83–88. Thereafter, Plaintiff was called to a meeting with Lynch and his staff, where Lynch permitted Plaintiff's staff "to perpetuate an annihilation of [Plaintiff's] character." *Id.* at ¶¶ 89–90.

On May 9, 2023, Courtney Watkins, Plaintiff's new supervisor, informed Plaintiff that two representatives would be coming to the plant to determine why the Santee Cooper Regional Water Systems team's morale was so low. *Id.* at ¶ 91. Plaintiff told Watkins that he would like to be interviewed last to explain why the team was suffering under Lynch's leadership. *Id.* at ¶ 92. Plaintiff alleges that several employees made false statements about him during the investigation

to facilitate his termination. *Id.* at ¶¶ 93–97. On May 16, 2023, Plaintiff was informed that he would not be allowed to perform any of his job duties and would be relegated to cubical work from Corporate Headquarters until the investigation was over. *Id.* at ¶ 98.

On May 19, 2023, an HR representative called Plaintiff and informed him that he was suspended. *Id.* at 102. That same day, Santee Cooper security policy arrived at Plaintiff's personal residence to pick up his company keys, even though Plaintiff had already informed Santee Cooper that he had the keys with him and that he was not at home. *Id.* at ¶ 99. When Plaintiff's wife answered the door to find Santee Cooper police, she thought something terrible had happened to her husband. *Id.* at ¶ 100.

On May 24, 2023, Plaintiff was interviewed by HR via phone for over two hours. *Id.* at ¶ 104. Plaintiff informed HR that the recent actions were retaliatory for his complaints and that he had been discriminated against based on his age and sex. *Id.*

On June 8, 2023, Plaintiff learned that he was being terminated for an incident involving Hunter Driggers and Matt Fitts. *Id.* at ¶ 105. Plaintiff's termination letter was dated June 12, 2023, and stated, in part, as follows:

> On May 16, 2023, Human Resources began scheduled listening sessions with employees of the Regional Water Systems. While HR was at the Lake Moultrie Regional Water System plant site, you intimidated one of your direct reports by telling him, in essence, to remember who got him this job when he was doing the dirty work for his boy, Richard. As a result, you were asked to leave the Lake Moultrie Regional Water System plant site, and not return to either Regional Water System Plant while HR investigated the report. It was requested that you work from the main office or home and to only contact employees regarding substantive Regional Water System matters.
>
> On the following day, May 17, 2023, you sent a text message to another direct report requesting a call to discuss the SCADA system. When the employee called, you did not discuss any Regional Water System business. Instead, you told the employee that you recorded a phone conversation that took place between them a few months prior and intended to play the recording for HR. The employee verbally told you and sent a text message reiterating that he did not know the call was being recorded and that he did not give you permission to share it.

4

Santee Cooper is committed to providing its employees with a safe work environment. One of Santee Cooper's core values is safety. Acts of intimidation and threats, either implied or direct, are prohibited on Company premises or while employees are engaged in the work or business of the Company, whether on-site or off-site. Your actions as described above are unacceptable as an employee, a manager, and a leader within the organization. They are contrary to Santee Cooper's values and violate Santee Cooper policy.

It is for these reasons it is recommended that your employment with Santee Cooper be terminated effective today, June 12, 2023.

*Id.* at ¶ 106.

That same day, Plaintiff submitted a resignation letter to Santee Cooper. *Id.* at ¶ 109. Plaintiff alleges that each of the reasons provided in the termination letter were based on false information provided by other employees and that Santee Cooper failed and refused to interview Plaintiff regarding the incidents described in the letter. *Id.* at ¶¶ 110–12.

**B. Factual allegations regarding the Individual Defendants**

1. Brian Lynch

Plaintiff alleges that Lynch was his direct supervisor, *id.* at ¶ 55, and that in 2022 and 2023, Plaintiff protested that Lynch's treatment of a female employee was hostile, *id.* at ¶ 57. Lynch allegedly treated Plaintiff poorly throughout 2022, which caused Plaintiff to begin to suffer depression. *Id.* at ¶ 58. Plaintiff alleges that "Lynch persuaded others to make false statements about [Plaintiff] in order to facilitate retaliation against [Plaintiff] for his actions of reporting discrimination." *Id.* at ¶ 70. Plaintiff alleges that at the end of 2022 and the beginning of 2023, Lynch consistently commented on Plaintiff's depression and told him that Plaintiff would be better off leaving his employment. *Id.* at ¶ 74. Lynch informed Plaintiff in February 2023 that Plaintiff would not receive a promotion due to his depression, that he should leave his employment or it would get bad for him, and that he needed to search every doctor on the planet to get his mind back in the game. *Id.* at ¶¶ 75–77.

Plaintiff alleges that at a meeting with Lynch and his staff sometime after March 8, 2023, Lynch permitted Plaintiff's staff "to perpetuate an annihilation of [Plaintiff's] character" and permitted the employees to make false statements about Plaintiff. *Id.* at ¶ 90. Plaintiff alleges that Lynch discussed Plaintiff's depression with "any and all persons who would listen" with the intent to interfere with Plaintiff's employment. *Id.* at ¶ 124. According to Plaintiff, Lynch informed Santee Cooper that Plaintiff had a disease and was a danger to himself and others, and that Plaintiff had major money issues, which is why he was terminated. *Id.* at ¶ 237. Plaintiff alleges that these statements were false and that Lynch made these statements to facilitate Plaintiff's termination. *Id.*

Plaintiff contends that Lynch interfered with Plaintiff's at-will employment by making such statements and that Lynch intentionally caused Plaintiff to suffer emotional distress. *Id.* at ¶¶ 251, 265. Finally, Plaintiff alleges that Lynch has boasted about facilitating Plaintiff's termination and has published internal and external memoranda regarding Plaintiff's performance in order to damage Plaintiff's reputation. *Id.* at ¶ 246.

2. <u>Hope Saul</u>

In 2022 and 2023, Plaintiff protested that Saul's treatment of a female employee was hostile. *Id.* at ¶ 57. Saul allegedly treated Plaintiff poorly throughout 2022, which caused Plaintiff to begin to suffer depression. *Id.* at ¶ 58. Plaintiff alleges that Saul initiated a "no trust campaign" against Plaintiff that was intended to ruin Plaintiff's employment and undermine Santee Cooper's confidence in Plaintiff's ability to perform his position. *Id.* at ¶ 59.

Plaintiff alleges that during an investigation conducted sometime around May 9, 2023, Saul published false statements regarding Plaintiff regarding his performance and threatening other. *Id.* at ¶ 97. Plaintiff further alleges that Saul made statements about Plaintiff's ability to perform his job, embezzling money, and mistreating employees, and that she made these statements "in the

office, during the investigation and to several others outside of Santee Cooper employment in order to facilitate the termination of [Plaintiff's] employment and to affect his reputation in the community." *Id.* at ¶ 238. He alleges that Saul informed Santee Cooper that Plaintiff was the problem with morale and that it was due to his depression; she informed Plaintiff's wife and others he had committed adultery; she informed Santee Cooper and others in the community that Plaintiff could not be trusted; she said on several occasions that Plaintiff was the devil and did not fit the description of a Godly man; she told Santee Cooper that Plaintiff was not worth the money and needed to be terminated due to his negligence; and she made statements about Plaintiff embezzling money after his employment ended. *Id.*

Plaintiff contends that Saul interfered with Plaintiff's at-will employment by making such statements and that Saul intentionally caused Plaintiff to suffer emotional distress. *Id.* at ¶¶ 251, 265. Finally, Plaintiff alleges that Saul has boasted about facilitating Plaintiff's termination and has published internal and external memoranda regarding Plaintiff's performance in order to damage Plaintiff's reputation. *Id.* at ¶ 246.

3. Jay Scurry

Plaintiff supervised several employees, including Jay Scurry. *Id.* at ¶ 61. In January 2023, Plaintiff demoted Scurry as a result of employees' complaints and for failing to properly perform his position, failing to properly supervise his employees, and failing to learn to coach employees or to attempt to get along with employees. *Id.* at ¶ 64. Plaintiff reported Scurry for discrimination against another individual based on race and sent Scurry to HR due to a disagreement with an African American employee that was perceived as negative and against company policy. *Id.* at ¶¶ 63, 65. According to Plaintiff, Scurry retaliated against Plaintiff for the demotion. *Id.* at ¶ 61.

Plaintiff alleges that in May 2023, Scurry "informed all employees" that the investigation in the Santee Cooper Regional Water Systems team's low morale "was just a formality as the decision had already been made to terminate" Plaintiff. *Id.* at ¶ 93. Plaintiff alleges that Scurry discussed Plaintiff's depression with "any and all persons who would listen" with the intent to interfere with Plaintiff's employment. *Id.* at ¶ 124. Plaintiff alleges that he reported Scurry "for sabotaging equipment." *Id.* at ¶ 230. According to Plaintiff, Scurry made the following false statements: Scurry informed persons at Santee Cooper and individuals in Moncks Corner that Plaintiff had money issues, had embezzled money, and that is why he was terminated; Scurry informed "others" that Plaintiff was on drugs; and Scurry informed "others" that Plaintiff had threatened employees and that is why he was terminated from Santee Cooper. *Id.* at ¶ 239. Plaintiff contends that Scurry interfered with Plaintiff's at-will employment by making such statements and that Scurry intentionally caused Plaintiff to suffer emotional distress. *Id.* at ¶¶ 251, 265. Finally, Plaintiff alleges that Scurry has boasted about facilitating Plaintiff's termination and has published internal and external memoranda regarding Plaintiff's performance in order to damage Plaintiff's reputation. *Id.* at ¶ 246.

### 4. Noel Ruppert

Plaintiff supervised Noel Ruppert. *Id.* at ¶ 61. In 2023, Plaintiff demoted Rupert to an operator A, which required Ruppert to work shift work again. *Id.* at ¶ 67. Plaintiff alleges that Ruppert retaliated against Plaintiff as a result of the demotion by falsely stating that Plaintiff threatened Ruppert, was a threat to all employees, and was the cause of low morale. *Id.* at ¶¶ 67–68. Plaintiff also alleges that, in retaliation for the demotion, Ruppert made the following false statements to "persons at Santee Cooper and in Moncks Corner": that Plaintiff had money problems and was on drugs, which is why he was terminated. *Id.* at ¶ 240.

Plaintiff contends that Ruppert interfered with Plaintiff's at-will employment by making such statements and that Ruppert intentionally caused Plaintiff to suffer emotional distress. *Id.* at ¶¶ 251, 265. Finally, Plaintiff alleges that Ruppert has boasted about facilitating Plaintiff's termination and has published internal and external memoranda regarding Plaintiff's performance in order to damage Plaintiff's reputation. *Id.* at ¶ 246.

### 5. Richard Wimberly

Plaintiff alleges that Richard Wimberly initiated a "no trust campaign" against Plaintiff that was intended to ruin Plaintiff's employment and undermine Santee Cooper's confidence in Plaintiff's ability to perform his position. *Id.* at ¶ 59. Plaintiff alleges that he reported to Santee Cooper that Wimberly was signing off on Hunter Driggers' false time sheets but that Santee Cooper refused to allow Plaintiff to discipline Wimberly or Driggers. *Id.* at ¶ 71.

Plaintiff alleges that Wimberly discussed Plaintiff's depression with "any and all persons who would listen" with the intent to interfere with Plaintiff's employment. *Id.* at ¶ 124. Plaintiff also alleges that Wimberly made the following false statements about Plaintiff with the hope that Wimberly would receive Plaintiff's job: Wimberly informed "persons at Santee Cooper and in Moncks Corner" that Plaintiff was unfaithful to his wife, was on drugs, and had embezzled money from Santee Cooper; and Wimberly informed "persons at Santee Cooper" that they should not eat biscuits Plaintiff purchased because they would be "eating the biscuits of the devil." *Id.* at ¶ 241.

Plaintiff contends that Wimberly interfered with Plaintiff's at-will employment by making such statements and that Wimberly intentionally caused Plaintiff to suffer emotional distress. *Id.* at ¶¶ 251, 265. Finally, Plaintiff alleges that Wimberly has boasted about facilitating Plaintiff's termination and has published internal and external memoranda regarding Plaintiff's performance in order to damage Plaintiff's reputation. *Id.* at ¶ 246.

6. Hunter Driggers

Plaintiff alleges that he became aware that Hunter Driggers was stealing time from Santee Cooper and committing significant safety violations. *Id.* at ¶ 71. Plaintiff reported these actions to HR, but Santee Cooper refused to allow Plaintiff to discipline Driggers. *Id.* Plaintiff alleges that during an HR investigation in May 2023, Driggers lied about Plaintiff by saying that Driggers was fearful of Plaintiff and that Plaintiff harassed and intimidated Driggers. *Id.* at ¶ 94. Plaintiff alleges that Driggers made these statements to interfere with Plaintiff's employment, damage Plaintiff's reputation, and facilitate Plaintiff's termination for false reasons. *Id.* at ¶¶ 95–96.

Plaintiff alleges that after Plaintiff's termination, Driggers made the false statement that Plaintiff was going to blow up Santee Cooper's facility, which resulted in a "Be on the lookout" for Plaintiff. *Id.* at ¶¶ 115–16, 242. Plaintiff also alleges that Driggers falsely told Santee Cooper that Plaintiff threatened him, and Driggers repeated statements made by Lynch, Saul, Scurry, and Wimberly, despite knowing the statements were false. *Id.* at ¶ 242. Plaintiff contends that Driggers interfered with Plaintiff's at-will employment by making such statements and that Driggers intentionally caused Plaintiff to suffer emotional distress. *Id.* at ¶¶ 251, 265. Finally, Plaintiff alleges that Driggers has boasted about facilitating Plaintiff's termination and has published internal and external memoranda regarding Plaintiff's performance in order to damage Plaintiff's reputation. *Id.* at ¶ 246.

7. Matt Fitts

Plaintiff alleges that during an HR investigation in May 2023, Matt Fitts lied about Plaintiff by saying that Fitts was fearful of Plaintiff and that Plaintiff harassed and intimidated Fitts. *Id.* at ¶ 94. Plaintiff alleges that Fitts made these statements to interfere with Plaintiff's employment, damage Plaintiff's reputation, and facilitate Plaintiff's termination for false reasons. *Id.* at ¶¶ 95–

96. He also alleges that Fitts repeated statements made by Lynch, Saul, Scurry, and Wimberly, despite knowing the statements were false, and that Fitts falsely told Santee Cooper that Plaintiff had threatened Fitts. *Id.* at ¶ 243. Plaintiff further contends that Fitts interfered with Plaintiff's at-will employment by making such statements and that Fitts intentionally caused Plaintiff to suffer emotional distress. *Id.* at ¶¶ 251, 265. Finally, Plaintiff alleges that Fitts has boasted about facilitating Plaintiff's termination and has published internal and external memoranda regarding Plaintiff's performance in order to damage Plaintiff's reputation. *Id.* at ¶ 246.

## LEGAL STANDARD

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." *Williams v. Preiss-Wal Pat III, LLC*, 17 F. Supp. 3d 528, 531 (D.S.C. 2014); *see Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of [affirmative] defenses."). Pursuant to Rule 8 of the Federal Rules of Civil Procedure, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant will have "fair notice of what the claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). "[T]he facts alleged 'must be enough to raise a right to relief above the speculative level' and must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555, 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When considering a Rule 12(b)(6) motion, the court is required to evaluate the complaint in its entirety, accept the factual allegations in the pleading as true, and draw all reasonable factual inferences in favor of the party opposing the motion. *Kolon Indus., Inc.*, 637 F.3d at 440, 448. Moreover, the court must evaluate "the complaint in its entirety, as well as documents attached or incorporated into the complaint." *Id.* at 448. The court may consider a document not attached to the complaint, so long as the document "was integral to and explicitly relied on in the complaint," and there is no authenticity challenge. *Id.* (quoting *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)). "A complaint should not be dismissed as long as it provides sufficient detail about the claim to show that the plaintiff has a more-than-conceivable chance of success on the merits." *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 511 (4th Cir. 2015) (internal quotation marks omitted).

## DISCUSSION

Plaintiff asserts nine causes of action in his Amended Complaint:  (1) a claim against Santee Cooper for sex discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the South Carolina Human Affairs Law (the "SCHAL"); (2) a claim Santee Cooper for disability discrimination in violation of the Americans with Disabilities Act (the "ADA"); (3) a claim against Santee Cooper for age discrimination in violation of the Age Discrimination in Employment Act (the "ADEA") and the SCHAL; (4) a claim against Santee Cooper for hostile work environment in violation of the ADA, the ADEA, and Tile VII; (5) a claim against Santee Cooper for wrongful termination in violation of public policy; (6) a claim against Defendants Diggers, Fitts, Lynch, Saul, Scurry, Ruppert, and Wimberly (collectively, the "Individual Defendants") for slander; (7) a claim against the Individual Defendants for tortious interference with a contract;  (8) a claim against the Individual Defendants for intentional infliction

of emotional distress; (9) a claim against Santee Cooper for negligent supervision; and (10) a claim against Santee Cooper for retaliation in violation of 42 U.S.C. § 1981. ECF No. 41.

## I.    Santee Cooper's Partial Motion to Dismiss, ECF No. 43

Santee Cooper moves for partial dismissal of Plaintiff's Second Amended Complaint. ECF No. 43. Specifically, Santee Cooper argues that Plaintiff has failed to state a claim for Title VII or ADEA hostile work environment, wrongful termination in violation of public policy, negligent supervision, and Section 1981 retaliation. *Id.* at 2. However, Santee Cooper does not move for dismissal of Plaintiff's claims for Title VII/SCHAL sex discrimination, ADA disability discrimination, ADA hostile work environment, or ADEA/SCHAL age discrimination. *Id.*

### A.  Hostile Work Environment Claim Based on Sex and Age

Santee Cooper first moves for dismissal of Plaintiff's hostile work environment claims based on sex and age. ECF No. 43 at 2–4. To state a claim for a hostile work environment under Title VII or the ADEA, Plaintiff must plead facts showing that he was subjected to (1) unwelcome conduct (2) based on his sex (Title VII) or age (ADEA), that was (3) sufficiently severe or pervasive to alter Plaintiff's conditions of employment and to create an abusive work environment, and (4) imputable to Plaintiff's employer. *See Bazemore v. Best Buy*, 957 F.3d 195, 200 (4th Cir. 2020); *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (en banc); *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). A generalized, formulaic recitation of the elements of the hostile work environment cause of action is insufficient to state a valid claim. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

Santee Cooper argues that Plaintiff "merely alleges that he was treated differently than female and younger employees," but he has failed to allege any facts sufficient to establish the severe and pervasive prong of the hostile work environment claim. ECF No. 43 at 3. Santee Cooper notes Plaintiff's conclusory allegations that female employees were allowed to "harass" him but

argues that Plaintiff provides no facts on how he was "harassed." *Id.* Santee Cooper also contends that Plaintiff failed to allege facts showing that this alleged harassment was directed at him because of his sex. *Id.* In response, Plaintiff generally argues that he has alleged sufficient facts to state a claim for hostile work environment based on age and sex, though he does not point to any specific factual allegations in the Amended Complaint to support his argument. *See* ECF No. 54 at 4–6. Upon review, the undersigned is constrained to agree with Santee Cooper.

A workplace becomes "hostile" only "[w]hen the workplace is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993) (internal citations and quotation marks omitted). In determining whether a hostile work environment exists, courts examine the totality of the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Jessup v. Barnes Grp., Inc.*, 23 F.4th 360, 368 (4th Cir. 2022) (citation and internal quotation marks omitted).

Drawing all reasonable inferences in favor of Plaintiff, the undersigned finds that the allegations in the Second Amended Complaint do not set forth sufficiently severe or pervasive conduct to state a "plausible" hostile work environment claim based on age or sex. *See Harris*, 510 U.S. at 21. Although Plaintiff's Second Amended Complaint includes specific factual allegations related to hostile treatment based on his disability, *see, e.g.*, ECF No. 41 at ¶ 73–77, 82, 124, there are no similar allegations related to Plaintiff's age or sex. Thus, Plaintiff has failed to state a plausible claim for hostile work environment under either Title VII or the ADEA. Accordingly,

the undersigned recommends that Santee Cooper's Motion to Dismiss Plaintiff's hostile work environment claims based on sex and age be granted. *See* ECF No. 43 at 2–4.

### B. Claim for Wrongful Termination in Violation of Public Policy

Santee Cooper next moves to dismiss Plaintiff's state-law claim for wrongful termination in violation of public policy. ECF No. 43 at 4–43. "South Carolina has a strong policy favoring at-will employment," such that absent a contractual provision to the contrary, an employee may be terminated at any time for any reason or no reason, with or without cause. *Taghivand v. Rite Aid Corp.*, 768 S.E.2d 385, 386 (2015). Nonetheless, an at-will employee may have a claim for wrongful discharge in violation of public policy when (1) the employer requires the employee, as a condition of employment, to violate the law, or (2) the employee's termination itself is illegal. *Id.* at 387. Although the South Carolina Supreme Court has noted that the public policy exception is not limited to these situations, it has recognized no others, and it has cautioned courts to "exercise restraint when undertaking the amorphous inquiry of what constitutes public policy," as the "primary source of the declaration of the public policy of the state is the General Assembly." *Id.* Moreover, a claim for wrongful termination in violation of public policy is not actionable when the employee has an existing state or federal statutory remedy. *Barron v. Labor Finders of S.C.*, 713 S.E.2d 634, 637 (S.C. 2011).

In his Second Amended Complaint, Plaintiff alleges that Santee Cooper wrongfully terminated him in violation of public policy "when it terminated him because he reported crimes committed by other employees." ECF No. 41 at ¶ 223; *see id.* at ¶ 229 ("Mr. Wadford reported employees committing crimes as required by the law and the policies of the Defendants."). He also alleges that he "reported various Safety Violations including bleach spills, waste spills, and chemical spills," and he reported one employee "for sabotaging equipment." *Id.* at ¶¶ 227, 230.

In its Motion, Santee Cooper argues that Plaintiff has failed to allege or articulate any clear mandate of public policy that was violated by Santee Cooper. ECF No. 43 at 5. Santee Cooper also argues that a wrongful termination claim related to reporting safety violations is not actionable because Plaintiff had existing statutory remedies through federal and state OSHA departments. *Id.* Finally, Santee Cooper notes case law finding that termination for reporting suspected crimes does not give rise to a public policy exception. *Id.* at 3 (citing *Taghivand*, 768 S.E.2d at 389).

In response, Plaintiff contends his termination falls within the public policy exception because he "made reports of significant safety violations and employees committing the crime of stealing time from the company" and "he was terminated because he refused to go along with the violations of the law." ECF No. 54 at 13. Plaintiff further argues that his Amended Complaint presents a novel issue that should not be decided at the dismissal stage. *Id.* at 11–12.

Upon review, the undersigned is constrained to agree with Santee Cooper that Plaintiff has failed to allege sufficient facts to state a viable claim for wrongful termination in violation of public policy. As an initial matter, Plaintiff's allegations in support of this claim are largely conclusory. For instance, although Plaintiff alleges that Santee Cooper terminated him "in violation of a clear mandate of public policy and in violation of South Carolina Law," ECF No. 41 at ¶ 231, Plaintiff does not identify any public policy or law allegedly violated by his termination. *See Smith v. Sam Carbis Sol. Grp., LLC*, C/A No. 4:16-2320-RBH-TER, 2016 WL 11200718, at *6 (D.S.C. Nov. 15, 2016) (finding claim for wrongful discharge in violation of public policy should be dismissed where "Plaintiff points to no statute, constitutional protection, or judicial decision setting forth any 'clear mandate' of public policy"), *report and recommendation adopted,* 2017 WL 874983 (D.S.C. Mar. 6, 2017).

Additionally, Plaintiff alleges that he "reported employees committing crimes as required by the law and the policies of the Defendants," *id.* at ¶ 229, but he does not allege any facts showing criminal activity, nor does he identify any criminal laws that were allegedly violated. To the extent he asserts in his Response that "stealing time from the company" is a crime, ECF No. 54 at 13, the factual allegations in the Second Amended Complaint are not sufficient to support this assertion. Moreover, the Supreme Court of South Carolina has held that the public policy exception to at-will employment does not "permit a cause of action in tort for employees who are terminated for reporting a suspected crime." *Taghivand*, 768 S.E.2d at 386.

Similarly, although Plaintiff alleges that he "reported various Safety Violations including bleach spills, waste spills, and chemical spills," as well as that one employee sabotaged equipment, there are no factual allegations regarding when or to whom these reports were made, nor any other facts to support a finding that he was terminated in retaliation for making these reports. Moreover, "South Carolina courts have refused to extend the public policy exceptions to situations where the employee has an existing statutory remedy," and at least one court in this District has found a wrongful discharge claim based on alleged safety reports was not viable because the plaintiff "had existing statutory remedies for his occupational safety and retaliation claims under the federal OSHA statute, the OSHA regulation 29 U.S.C.A. § 660(c), and S.C. Code Ann. § 41-15-520." *Martin v. Boeing Co.*, C/A No. 2:16-CV-02797-DCN, 2016 WL 7239914, at *3–4 (D.S.C. Dec. 15, 2016); *see, e.g.*, *Barron*, 713 S.E.2d at 637 ("The public policy exception does not . . . extend to situations where the employee has an existing statutory remedy for wrongful termination."); *Stiles v. Am. Gen'l Life Ins. Co.*, 516 S.E.2d 449, 452 (S.C. 1999) (Toal, J., concurring) (explaining that the public policy exception "is not designed to overlap an employee's statutory or contractual rights to challenge a discharge, but rather to provide a remedy for a clear violation of public policy

where no other reasonable means of redress exists"); *Dockins v. Ingles Markets, Inc.*, 413 S.E.2d 18, 19 (S.C. 1992) (holding that wrongful termination claim is unavailable where the employee has a state or federal statutory remedy).

For all these reasons, the undersigned recommends that Santee Cooper's Motion to Dismiss the claim for Wrongful Termination in Violation of Public Policy be granted.

### C. Claim for Negligent Supervision

In his Ninth Cause of Action, Plaintiff alleges that Santee Cooper had a duty to protect Plaintiff from the wrongful acts of its employees and that it breached this duty by not properly supervising its employees and allowing them to harass, intimidate, bully, and inflict emotional distress on Plaintiff without justification. ECF No. 41 at ¶¶ 270–73.

To recover for negligence in an employment action under South Carolina law, the plaintiff must show that (1) the employer owed a duty to do or not to do any of the things alleged; (2) the employer breached this duty; (3) plaintiff was injured; and (4) the employer's breach proximately caused plaintiff's injuries. *Gause v. Doe*, 451 S.E.2d 408, 409 (S.C. Ct. App. 1994). "An essential element in a cause of action for negligence is the existence of a legal duty of care owed by the defendant to the plaintiff. Without a duty, there is no actionable negligence." *Bishop v. S.C. Dep't of Mental Health*, 502 S.E.2d 78, 81 (S.C. 1998). Whether a duty of care exists under the facts alleged is a matter of law. *See Steinke v. S.C. Dep't of Labor, Licensing & Regulation*, 520 S.E.2d 142, 149 (S.C. 1999) ("The court must determine, as a matter of law, whether the law recognizes a particular duty.").

Santee Cooper moves to dismiss Plaintiff's state-law claim for negligent supervision. ECF No. 43 at 5–7. In its Motion, Santee Cooper first argues that, to the extent Plaintiff's claim is based on his termination, it did not owe Plaintiff, an at-will employee, a common law duty of care. *Id.* at 6. The undersigned agrees. "South Carolina law is clear that an employer does not owe a duty of

care in terminating an at-will employee." *Odom v. CVS Caremark Corp.*, No. CA 3:14-456-MGL-SVH, 2014 WL 7733823, at *4 (D.S.C. Dec. 12, 2014) (citing *Gause*, 451 S.E.2d at 409), *report and recommendation adopted as modified,* No. CIV.A. 3:14-456-MGL, 2015 WL 412833 (D.S.C. Jan. 30, 2015). Indeed, an at-will employee may "be terminated at any time, for any reason, or for no reason at all, irrespective of any inadequate investigations, false assumptions, or failures to reevaluate on the part of the employer." *Gause*, 451 S.E.2d at 409; *see also Armstrong v. Argos USA LLC*, No. 2:23-CV-00478-RMG, 2023 WL 3306502, at *4 (D.S.C. May 5, 2023) (same), *appeal dismissed,* No. 23-1639, 2023 WL 8622287 (4th Cir. Oct. 4, 2023).

Santee Cooper further argues that Plaintiff's claim for damages sustained during his employment resulting from alleged negligent supervision is preempted by the exclusivity provision of the South Carolina Workers' Compensation Act, S.C. Code Ann. § 42-1-540 (the "Act"), and does not fall within any of the Act's exceptions. ECF No. 43 at 6–7. In Response, Plaintiff argues that he made Santee Cooper aware of the actions of its employees by reporting violations of the law, violations of Title VII, violations of ADEA, violations of ADA, and slander, such that Santee Cooper was put on notice regarding the behavior of its employees and owed Plaintiff a duty of care. ECF No. 54 at 15. He further argues that Santee Cooper breached this duty by failing to protect Plaintiff from the intentional acts of the individual employees. *Id.* Upon review, the undersigned is constrained to agree with Santee Cooper.

The Act provides that "[e]very employer and employee . . . shall be presumed to have accepted the provisions of the [Act] respectively to pay and accept compensation for personal injury . . . arising out of and in the course of the employment and shall be bound thereby." S.C. Code Ann. § 42-1-310. A "personal injury" is "an injury by accident arising out of and in the course of employment." S.C. Code Ann. § 42-1-160(A).

South Carolina courts have found that workplace harassment and intentional torts by co-employees (such as outrage, assault and battery) can constitute personal injuries within the scope of the Act. *See Dickert v. Metro. Life Ins. Co.*, 428 S.E.2d 700, 702 (S.C. 1993) (finding that alleged workplace harassment constituted "unusual and extraordinary" conditions of employment for purposes of determining whether the harassment was an "accident" under the Act, reasoning that plaintiff "could not have anticipated Co–Employee's egregious conduct at the time of her employment" and that although "the conduct persisted through an extended period, it was at no time an ordinary incident of employment"); *Loges v. Mack Trucks*, 417 S.E.2d 538, 539–41 (S.C. 1992) (holding that allegations of intentional infliction of emotional distress, assault, and battery arising out of workplace harassment constituted personal injuries within the scope of the Act).

The Act's exclusivity provision states, in relevant part, the following:

> The rights and remedies granted by this title to an employee when he and his employer have accepted the provisions of this title, respectively, to pay and accept compensation on account of personal injury or death by accident, shall exclude all other rights and remedies of such employee . . . as against his employer, at common law or otherwise, on account of such injury, loss of service or death.

S.C. Code Ann. § 42-1-540.

Based on this provision, South Carolina courts hold that the Act provides the exclusive remedy against an employer for an employee who sustains injuries arising out of his employment. *Sabb v. S.C. State Univ.*, 567 S.E.2d 231, 234 (S.C. 2002). Indeed, the Supreme Court of South Carolina has explained that the only exceptions to the Act's exclusivity provisions are: (1) where the injury results from the act of a subcontractor who is not the injured person's direct employer; (2) where the injury is not accidental but rather results from the intentional act of the employer or its alter ego; (3) where the tort is slander and the injury is to reputation; or (4) where the Act specifically excludes certain occupations. *Cason v. Duke Energy Corp.*, 560 S.E.2d 891, 893 n.2

(S.C. 2002); *see Kerr v. Hammond School*, No. 3:17-3109-JFA-KFM, 2018 WL 3132409, at *2 (D.S.C. Feb. 22, 2018).

Both federal and state courts in South Carolina have held that state law claims for negligence, including claims for negligent supervision, retention, and hiring, are preempted by the Act. *See, e.g.*, *Alexander v. S.C. Dep't of Transp.*, No. CV 3:20-4480-TLW-SVH, 2021 WL 5167807, at *9 (D.S.C. Aug. 23, 2021) (finding that plaintiff's claim that his employer "ha[d] a duty that it breached to protect Plaintiff from a hostile work environment and retaliation" was a negligence claim that was barred by the exclusivity provision of the Act); *Lugo v. Boeing Co.*, No. 2:19-CV-2995-RMG, 2020 WL 495336, at *4 (D.S.C. Jan. 30, 2020) ("Because Plaintiff's negligent supervision claim clearly arises out of and in the course of his employment with Defendant, and as both federal and state courts in South Carolina have held the Act preempts negligent hiring and supervision claims, Plaintiff's negligent supervision claim is dismissed." (internal quotation marks omitted)); *Williams v. Windstream Servs., LLC*, No. 618CV03049DCCJDA, 2019 WL 3066653, at *6 (D.S.C. Feb. 12, 2019) (finding that "Plaintiff's negligence claim seeking to recover for Defendant's alleged failure to intervene in and investigate his harassment claims is . . . barred" pursuant to the Act's exclusivity provision and should be dismissed on that basis); *Ray v. Bechtel Savannah River, Inc.*, No. CIV.A.1:06 2946 HFF, 2007 WL 1960587, at *1–2 (D.S.C. July 2, 2007) (granting motion to dismiss and finding that plaintiff's claims for negligence, negligent hiring, and negligent supervision and training clearly do not fall under any of the exceptions of the Act); *Palmer v. House of Blues Myrtle Beach Rest. Corp.*, No. 4:05-3301-RBH, 2006 WL 2708278, at *3 (D.S.C. Sept. 20, 2006) (concluding that negligence claim "should be dismissed as barred by the exclusivity provisions of the workers' compensation law"); *Saab*, 567 S.E.2d 231, 234 (S.C. 2002) (finding that the Act provides the exclusive remedy

for employee's claims of negligent supervision and negligent retention arising out of and in the course of her employment); *Dickert*, 428 S.E.2d at 701 (holding that the Act provides the exclusive remedy for work-related injuries, and that claims for negligence, including hiring, retention and supervision, as well as emotional distress, are covered by the Act).

Accordingly, the undersigned concludes that Plaintiff's cause of action against Santee Cooper for negligent supervision should be dismissed.

### D. Claim for Retaliation in Violation of 42 U.S.C. § 1981

Finally, Santee Cooper moves to dismiss Plaintiff's claim for retaliation in violation of 42 U.S.C. § 1981, arguing that Plaintiff has failed to plead sufficient facts showing that but for his alleged complaints about race discrimination, he would not have been terminated by Santee Cooper. ECF No. 43 at 7–8. In his Response, Plaintiff argues that he has stated a claim for retaliation "due to the fact that he made a report regarding a racial slur and that he was terminated for that report." ECF No. 54 at 15–17.

"Section 1981 guarantees to all persons in the United States 'the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens.'" *Spriggs v. Diamond Auto. Glass*, 165 F.3d 1015, 1017 (4th Cir. 1999) (quoting 42 U.S.C. § 1981(a)). Section 1981 defines "make and enforce contracts" as including the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

Section 1981 "encompasses retaliation claims" for opposing race discrimination in employment. *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 446 (2008). "To prevail [on a § 1981 claim], a plaintiff must initially plead and ultimately prove that, but for race, [he] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.- Owned Media*, 589 U.S. 327, 341 (2020). Alleging that "race played 'some role' in the defendant's

decisionmaking process" is not enough under § 1981. *Id.* at 331; *see Nadendla v. WakeMed*, No. 5:18-CV-540-H, 2021 WL 1056521, at \*2 (E.D.N.C. Feb. 23, 2021), *aff'd*, 24 F.4th 299 (4th Cir. 2022). Similarly, "to state a § 1981 retaliation claim, a plaintiff must allege facts rendering it plausible that, *but for her participation in protected activity*, she would not have suffered a materially adverse action." *Ali v. BC Architects Engineers, PLC*, 832 F. App'x 167, 172–73 (4th Cir. 2020), *as amended* (Oct. 16, 2020) (emphasis added). "Thus, to survive a motion to dismiss, a plaintiff must allege facts that, if accepted as true, allow the court to draw a reasonable inference as to those legal requirements." *Nadendla v. WakeMed*, 24 F.4th 299, 305 (4th Cir. 2022).

In his Tenth Cause of Action for § 1981 retaliation, Plaintiff alleges that he reported Scurry for race discrimination and reported Fitts "for making a racial slur on TikTok," and that, because of these reports, Plaintiff was disciplined and terminated. ECF No. 41 at ¶¶ 279–81. Earlier in the Second Amended Complaint, Plaintiff alleges that he "sent Scurry to HR to coach him due to . . . a disagreement with an African American employee that was perceived as negative and against company policy," *id.* at ¶ 63, that Plaintiff "reported Mr. Scurry for discriminating against another individual based on their race," *id.* at ¶ 65, and that Plaintiff "was retaliated against for reporting Mr. Scurry for discriminating against an[] African American," *id.* at ¶ 66. There are no other allegations in the Second Amended Complaint related to Plaintiff's report regarding Fitts, and there are no factual allegations regarding when any of these alleged reports were made.

Elsewhere in the Second Amended Complaint, Plaintiff alleges that sometime around February 2023, Plaintiff requested a meeting with HR to discuss how he was being treated by others based on his depression and that after his report to HR, he began to be treated differently, which he asserts "was retaliatory for his complaints regarding age, race and sex." *Id.* at ¶ 80. Plaintiff also alleges that he was terminated "because of his perceived disability," *id.* at ¶ 175,

because of "his age and complaints regarding age discrimination," *id.* at ¶ 198, and "because he reported crimes committed by other employees," *id.* at ¶ 223.

Viewing the allegations in the light most favorable to Plaintiff, the undersigned finds that Plaintiff has failed to allege sufficient factual allegations to support a reasonable inference that "but for" his complaints about race discrimination, his employment would not have been terminated, as is required to state a § 1981 retaliation claim. *See Comcast*, 589 U.S. at 341; *Nadendla*, 24 F.4th at 305; *Ali*, 832 F. App'x at 172–73. First, Plaintiff does not allege when the alleged complaints regarding race discrimination were made, such that there are no facts to support a reasonable inference that those complaints were causally connected to his termination, much less a but-for cause of his termination. *See Ali*, 832 F. App'x at 173 (dismissing § 1981 retaliation claim upon finding that allegations did not support reasonable inference of causation where alleged complaint was not made close in time to the alleged adverse action); *see also Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (explaining that temporal proximity may suffice to establish causation when protected activity and adverse action are "very close" and relying on decisions ruling that three- and four-month intervals were insufficient); *King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003) (explaining that ten-week period between protected activity and employment action is generally "sufficiently long so as to weaken significantly the inference of causation between the two events").

Moreover, Plaintiff explicitly alleged that his termination was the result of disability discrimination, age discrimination, retaliation for making complaints regarding age discrimination, and retaliation for reporting criminal activity, such that the Second Amended Complaint does not

plausibly suggest that Plaintiff's race discrimination complaints caused his termination.[2] *See McKenzie-El v. Am. Sugar Ref., Inc.*, No. 21-1089, 2021 WL 5412341, at *2 (4th Cir. Nov. 19, 2021) (per curium) (holding that where a plaintiff "explicitly pled that his age, religion, and complaints to human resources were causes of his employer's actions," dismissal of a § 1981 claim for failure to allege "but for" causation was appropriate); *see also Arora v. Nav Consulting Inc.*, No. 21 C 4443, 2022 WL 7426211, at *3 (N.D. Ill. Oct. 13, 2022) (dismissing § 1981 claim where the "complaint does not explain which alleged employment actions were motivated by race-based animus (versus ethnicity or national origin)" and the complaint "does not plausibly suggest that [the plaintiff's] Asian race (rather than his Indian ethnicity, national origin, or status as a recent immigrant) caused Defendants' actions, much less constituted the 'but for' cause"); *Adetoro v. King Abdullah Acad.*, 585 F. Supp. 3d 78, 83–84 (D.D.C. 2020) (finding that former employees' complaint failed to meet *Comcast*'s but-for causation standard and explaining: "*Comcast* thus demands more from the Former Employees. They must show that—but for [their race]—they would have remained employed at the Academy. But their own allegations, accepted as true, sink this theory. The Former Employees offer a buffet of reasons other than race that plausibly caused, or contributed to, their termination from the Academy. The most prominent are national origin and religion.").

Accordingly, the undersigned recommends that Santee Cooper's Motion to Dismiss the § 1981 retaliation claim be granted.

---

[2] Plaintiff cites *Buckley v. Secretary of Army*, No. 21-12332, 2024 WL 1326503 (11th Cir Mar. 28, 2024), for the proposition that he does not need to show a protected characteristic was the but-for cause of the ultimate adverse decision, but only that it merely played a role in the decision. *See* ECF No. 54 at 16–17 & n.42. However, *Buckley* is inapposite, as it addressed a claim under the Title VII federal-sector provision, not a § 1981 claim.

II.    **The Individual Defendants' Motions to Dismiss (ECF Nos. 44 and 45)**

Plaintiff's Second Amended Complaint asserts the same state law claims against all the individual Defendants: (1) Slander (Sixth Cause of Action); (2) Tortious Interference with a Contract (Seventh Cause of Action); and (3) Intentional Infliction of Emotional Distress (Eighth Cause of Action). ECF No. 41. Defendant Fitts and the Remaining Defendants move, pursuant to Rule 12(b)(6), for dismissal of all three state-law causes of action, and they raise substantially the same arguments in support of their Motions. *See* ECF No. 44 at 5–9 (Remaining Defendants' Motion); ECF No. 45 at 3–9 (Fitts Motion).

A.    **Slander**

"The tort of defamation allows a plaintiff to recover for injury to his or her reputation as the result of the defendant's communications to others of a false message about the plaintiff." *Swinton Creek Nursery v. Edisto Farm Credit, ACA*, 514 S.E.2d 126, 133 (S.C. 1999). Slander is spoken defamation, and libel is written defamation. *Holtzscheiter v. Thomson Newspapers, Inc.*, 506 S.E.2d 497, 501 (S.C. 1998).

To establish a claim for defamation under South Carolina law, a plaintiff must show the following elements: (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged publication to a third party; (3) fault on the defendant's part in publishing the statement; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. *McNeil v. S.C. Dep't of Corr.*, 743 S.E.2d 843, 848 (S.C. Ct. App. 2013); *Parrish v. Allison*, 656 S.E.2d 382, 388 (S.C. Ct. App. 2007). With respect to the first element, a "communication is defamatory if it tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating with him." *Parrish*, 656 S.E.2d at 389 (quoting *Holtzscheiter*, 506 S.E.2d at 513 (Toal, J., concurring)).

With respect to the fourth element, if the statement is actionable irrespective of special harm (actual damage that must be pled and proved), it is said to be actionable *per se*, while if special damage must be pled to maintain the action, then it is said to be actionable *per quod*. *Capps v. Watts*, 246 S.E.2d 606, 609 (S.C. 1978). "[S]lander is actionable *per se* only if it charges the plaintiff with one of five types of acts or characteristics: (1) commission of a crime of moral turpitude; (2) contraction of a loathsome disease; (3) adultery; (4) unchastity; or (5) unfitness in one's business or profession." *Holtzscheiter*, 506 S.E.2d at 502.

Courts in South Carolina have found that a plaintiff fails to state a claim for defamation if the complaint "does not state with specificity the time, place, medium, and listener of the alleged defamatory statements." *Doe v. Cannon*, No. 2:16-CV-00530-RMG, 2017 WL 591121, at *1 (D.S.C. Feb. 14, 2017) (citing *English Boiler & Tube, Inc. v. W.C. Rouse & Son, Inc.*, No. 97-2397, 199 WL 89125, 172 F.3d 862 (4th Cir. 1999) (table) ("in order to plead defamation, a plaintiff should allege specific defamatory comments including 'the time, place, content, speaker, and listener of the alleged defamatory matter'") (quoting *Caudle v. Thomason*, 942 F. Supp. 635, 638 (D.D.C. 1996))).

The Individual Defendants move for dismissal of the slander claim, arguing that Plaintiff has failed to allege with specificity the time, place, and listener of the alleged defamatory statements. ECF No. 44 at 5. In response, Plaintiff argues that he has alleged that "Defendants made their false statements to Human Resources and repeated those false statements to members of the community in Moncks Corner." ECF No. 55 at 6; ECF No. 56 at 6. Plaintiff further contends that he "cannot present each and every person the Defendant made the false statement to at the complaint stage," and he maintains that "the most harmful statements were made to human resources that led to the termination of the Plaintiff." *Id.*

The Individual "Defendants cannot be expected to defend against an allegation that [they] defamed Plaintiff by making a statement heard by unknown persons at an unknown place at an unknown time." *See Colleton v. Charleston Water Sys.*, 225 F. Supp. 3d 362, 369 (D.S.C. 2016). Viewing the allegations in the light most favorable to Plaintiff, the undersigned agrees with Defendants that Plaintiff failed to allege with specificity the time, place, and listener of the alleged defamatory statements made by Lynch, Scurry, Ruppert, Wimberly, Driggers, and Fitts. *See, e.g.*, ECF No. 41 at ¶ 237 (alleging Lynch informed "Santee Cooper" that Plaintiff was a danger to himself and had major money issues); *id.* at ¶ 239 (alleging Scurry informed "persons at Santee Cooper and individuals in Moncks Corner" that Plaintiff embezzled money and informed "others" that Plaintiff was on drugs and had threatened employees); *id.* at ¶ 240 (alleging Ruppert falsely told "persons at Santee Cooper and in Moncks Corner" that Plaintiff had money problems and was on drugs); *id.* at ¶ 241 (alleging Wimberly informed "persons at Santee Cooper and in Moncks Corner" that Plaintiff was unfaithful to his wife, was on drugs, and had embezzled money); *id.* at ¶¶ 115–16, 242 (alleging Driggers falsely told Santee Cooper that Plaintiff threatened him and was going to blow up Santee Cooper's facility); *id.* at ¶ 243 (alleging that Fitts falsely told Santee Cooper that Plaintiff had threatened Fitts).

Allegations that the individual employees made the alleged statements to "Santee Cooper" or to "persons at Santee Cooper," "others," or "individuals in Moncks Corner," without more specificity regarding the actual listener of those statements and the context in which those statements were made, are not sufficient to plausibly plead the publication element of his defamation claim and do not provide the requisite detail to permit Defendants to defend against such claims. *See Colleton*, 225 F. Supp. 3d at 369 (finding that allegations that defamatory statement "occurred in the workplace[] and was overheard by one or more CWS employees" was

"still insufficient for notice pleading"); *see also see McNeil*, 743 S.E.2d at 848 (indicating that a plaintiff must plead every element of defamation with specificity and affirming dismissal of defamation claim where plaintiff failed to allege facts showing the contents of the alleged false statements, that the statements were unprivileged, that the statements were made to a third party, and to whom the false statements were allegedly made). Without providing more specific information regarding to whom these alleged statements were made, Plaintiff has not alleged a plausible slander claim. *See id.*; *see also Carson v. Emergency MD, LLC*, No. CV 6:20-1946-HMH, 2020 WL 5077655, at *5 (D.S.C. Aug. 25, 2020) (granting motion to dismiss defamation claim, explaining that "it is unclear to whom the defamatory statements were published, as Carson has not pled such facts with specificity under this cause of action"); *Jackson v. Denmark Tech. Coll.*, No. CV 1:17-03431-MGL, 2018 WL 3729743, at *6 (D.S.C. Aug. 6, 2018) ("Without revealing to whom the defamatory statements were made, however, Jackson has not properly pled the publication element of defamation, and thus she has not met the pleading standards under Fed. R. Civ. P. 8(a)(2), *Bell Atl. Corp.*, and *Iqbal*."); *McKay v. Med. Univ. of S.C.*, No. CV 2:17-45-RMG-BM, 2017 WL 9250345, at *6 (D.S.C. July 19, 2017) (finding plaintiff failed state defamation claim where plaintiff alleged that the individual defendants "made false and defamatory statements about her to individuals within MUSC" and to third parties, but plaintiff did "not actually set forth anywhere in her allegations to whom any allegedly defamatory statements were made"), *report and recommendation adopted,* No. CV 2:17-45-RMG, 2017 WL 3477799 (D.S.C. Aug. 14, 2017). Accordingly, the undersigned recommends that the slander claim be dismissed, without prejudice, as against Defendants Lynch, Scurry, Ruppert, Wimberly, Driggers, and Fitts.

However, the undersigned finds that Plaintiff has alleged a plausible slander claim against Saul. Specifically, Plaintiff alleges that Saul falsely told Plaintiff's wife that Plaintiff had committed adultery. ECF No. 41 at ¶ 238. This allegation, if true, is sufficient to state (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged publication to a third party; (3) fault on the defendant's part in publishing the statement; and (4) the statement is actionable *per se*. *See McNeil*, 743 S.E.2d at 848; *see also Holtzscheiter*, 506 S.E.2d at 502 ("Slander is actionable *per se* . . . if it charges the plaintiff with . . . adultery[.]"). Here, because Plaintiff identifies both the specific false statement and the specific third party to whom that statement was published, the undersigned finds the slander claim against Saul is sufficiently pled to survive dismissal at this stage of the litigation and provides enough information for Saul to defend against this claim. *See Mosely-Jenkins v. Orangeburg Cnty. Consol. Sch. Dist. 4*, No. 5:19-CV-0701-JMC-TER, 2019 WL 8953202, at *5 (D.S.C. Nov. 6, 2019) (finding allegations sufficient to state defamation claim where plaintiff identified the specific false statement and the specific audience to whom the statement was made), *report and recommendation adopted,* No. 5:19-CV-00701-JMC, 2020 WL 1443262 (D.S.C. Mar. 25, 2020). Accordingly, the undersigned recommends that the Motion to Dismiss the defamation claim against Saul be denied.

### B. Tortious Interference with a Contract

All the Individual Defendants move for dismissal of Plaintiff's claim for tortious interference with a contract. The elements of a cause of action for tortious interference with a contract are the following: "(1) the existence of a contract; (2) knowledge of the contract; (3) intentional procurement of its breach; (4) the absence of justification; and (5) resulting damages." *Hall v. UBS Fin. Servs. Inc.*, 866 S.E.2d 337, 344 (S.C. 2021) (quoting *Eldeco, Inc. v. Charleston Cnty. Sch. Dist.*, 642 S.E.2d 726, 731 (2007)). South Carolina jurisprudence recognizes

that a plaintiff may have a claim for tortious interference with an at-will employment contract, even absent an underlying breach by the terminating employer. *Id.* at 345 ("[W]e hold the absence of an underlying breach by the terminating employer does not shield the third party from liability when she intentionally and unjustifiably procures the termination of an at-will employee.").

"A claim for tortious interference with contract against co-employees requires the individual co-employees to have been acting outside of their employment and not as agents of the Corporate Defendants." *Barrett v. Grand Strand Reg'l Med. Ctr./HCA Healthcare, Inc. Parallon*, No. 423CV02658RBHTER, 2024 WL 1191109, at *6 (D.S.C. Mar. 20, 2024). This is because "tortious interference with contractual relations lies only against a third party, not a party to the contract." *Hall*, 866 S.E.2d at 345 (citing *Ross v. Life Ins. Co. of Va.*, 259 S.E.2d 814, 815 (S.C. 1979); *Threlkeld v. Christoph*, 312 S.E.2d 14, 15 (S.C. Ct. App. 1984)). South Carolina courts have explained that "a corporate employer is a party to the contract of its employee, and an officer or agent of the corporation acting for or on behalf of the corporation is not a third party either." *Barrett*, 2024 WL 1191109, at *6 (quoting *Todd v. S.C. Farm Bureau Mut. Ins. Co.*, 321 S.E.2d 602, 607 (S.C. Ct. App. 1984) (holding endorsed by *Hall*, 866 S.E.2d at 345)). If a co-employee qualifies as a third-party employee, then "the threshold viability of the claim depends upon whether the third-party employee, without justification, made a report to the employer which induced the employer to terminate the at-will employee." *See Hall*, 866 S.E.2d at 343.

In his claim for tortious interference, Plaintiff alleges that each of the Individual Defendants "intentionally interfered with [his employment] contract by providing false information, intimidation, harassment, bullying, and hostile work environment." ECF No. 41 at ¶ 251. Plaintiff also alleges, in conclusory fashion, that he "was terminated from his employment based on the false representations of the" Individual Defendants and that they "went out of their

way to ruin [his] employment in order to create a hostile work environment and facilitate his termination from employment." *Id.* at ¶¶ 253, 255. Plaintiff also alleges that the sole purpose of the Individual Defendants was to harm and retaliate against him. *Id.* at ¶ 257.

Viewing Plaintiff's factual allegations and all reasonable inferences therefrom in the light most favorable to Plaintiff, the undersigned finds that Plaintiff has alleged sufficient facts to state a claim against the Individual Defendants for tortious interference. He alleges that Lynch made false statements to Santee Cooper to induce his termination, including that Plaintiff was a danger to himself and others and had money issues, ECF No. 41 at ¶ 237; that Saul falsely informed Santee Cooper that Plaintiff could not be trusted and embezzled money, among other things, in order to facilitate his termination, *id.* at ¶¶ 59, 238; that Scurry induced his termination by falsely telling persons at Santee Cooper that Plaintiff had money issues and embezzled money, among other things, *id.* at ¶ 239; that Ruppert facilitated Plaintiff's termination by falsely telling persons at Santee Cooper that Plaintiff had money problems and was on drugs, *id.* at ¶ 240; that Wimberly falsely told people at Santee Cooper, with the intent of ruining Plaintiff's employment and receiving Plaintiff's job, that Plaintiff was on drugs and had embezzled money from Santee Cooper, *id.* at ¶¶ 59, 241; that Driggers falsely told Santee Cooper that Plaintiff threatened him, among other things, to facilitate Plaintiff's termination, *id.* at ¶¶ 94–96, 242; and that Fitts lied to HR about Plaintiff threatening him in order to facilitate Plaintiff's termination, *id.* at ¶¶ 94–96, 243. Although Plaintiff ultimately may not be able to establish a tortious interference claim against any or all of the Individual Defendants, at this stage of the litigation, his allegations are sufficient to state a plausible claim. Accordingly, the undersigned recommends that the Motions to Dismiss the tortious interference claim be denied.

## C. Intentional Infliction of Emotional Distress

To state a claim for intentional infliction of emotional distress (IIED), a plaintiff must allege facts showing the following elements: (1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from defendant's conduct; (2) the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community; (3) defendant's actions caused the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was severe so that no reasonable man could be expected to endure it. *See Argoe v. Three Rivers Behavioral Ctr. & Psychiatric Solutions*, 697 S.E.2d 551, 555 (S.C. 2010); *Hansson v. Scalise Builders of S.C.*, 650 S.E.2d 68, 70 (S.C. 2007); *see Park v. Se. Serv. Corp.*, 771 F. Supp. 2d 588, 591–92 (D.S.C. 2011). The court plays a significant gatekeeping role in order "to prevent claims for intentional infliction of emotional distress from becoming a panacea for wounded feelings rather than reprehensible conduct." *Hansson*, 650 S.E.2d at 72 (internal quotation marks omitted). Thus, the "question of whether a defendant's conduct may be reasonably regarded as so extreme and outrageous as to allow recovery is a question for the court to determine in the first instance." *Wright v. Sparrow*, 381 S.E.2d 503, 506 (S.C. Ct. App. 1989).

The Second Restatement on Torts provides the following regarding the tort of IIED:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Davis v. Gestamp S.C. LLC*, No. 7:23-CV-967-TMC, 2024 WL 3596864, at *7 (D.S.C. Mar. 26, 2024) (quoting Restatement (Second) of Torts § 46, Comment d (1965)). South Carolina courts have favorably quoted this language and their decisions highlight the difficulty in establishing the "extreme and outrageous conduct" requirement of this tort. *Id.*; *see, e.g.*, *Corder v. Champion Road Machinery Intern. Corp.*, 324 S.E.2d 79, 81–82 (S.C. Ct. App. 1984) (quoting the aforementioned language from the Restatement and stating that, "[w]hile wrongful discharge for any reason is reprehensible conduct and may cause mental anguish to the discharged employee, it is not in itself the kind of extreme conduct which gives rise to a legal claim for outrage").

Defendants argue that Plaintiff's IIED claim should be dismissed because it fails to allege sufficient facts to state a claim. The undersigned agrees.

Although Plaintiff asserts that some of or all the Individual Defendants made false statements about him to others, commented on his depression, and set out to interfere with his employment, the allegations in the Second Amended Complaint do not set forth any facts detailing, or even suggesting, the type of extreme and outrageous conduct required to establish an IIED claim. *See Smith v. Sam Carbis Sols. Grp., LLC*, No. 416CV02320RBHTER, 2017 WL 874983, *3 (D.S.C. Mar. 6, 2017) (granting motion to dismiss IIED claim upon finding the plaintiff's general allegations that the chief operating officer and human resources representative verbally abused, harassed, and intimidated her insufficient to state a plausible claim that the "conduct was so extreme and outrageous so as to exceed all possible bounds of decency' such that it 'must be regarded as atrocious, and utterly intolerable in a civilized community'"); *Callum v. CVS Health Corp.*, 137 F. Supp. 3d 817, 856–57 (D.S.C. 2015) (granting motion to dismiss upon finding that defendant's alleged conduct—laughing at and denying Plaintiff's request for an accommodation, insulting Plaintiff with a racial slur, speaking to Plaintiff in an aggressive tone, and threatening to

34

call the police on Plaintiff—did "not rise to the level of extreme and outrageous conduct necessary to state a claim for IIED"); *see also Moore v. Rural Health Servs., Inc.*, No. CIV.A.1:04 376 RBH, 2007 WL 666796, at *17 (D.S.C. Feb. 27, 2007) (finding that where defendant board members came to Plaintiff's workplace, called him a "racist" and threatened to fire him from the board, called a sheriff's deputy to have him escorted off the property, shouted that he was a thief, and gave a newspaper reporter material from Plaintiff's personnel file, such conduct was not sufficient "to meet the high standard for establishing Plaintiff's outrage claim under South Carolina law"); *Shipman v. Glenn*, 443 S.E.2d 921, 922 (S.C. Ct. App. 1994) (determining that, while the plaintiff's supervisor's conduct was "callous and offensive," when he ridiculed the plaintiff for her speech impediment and "verbally abused" and "threatened" her, this conduct could not form the basis of an intentional infliction of emotional distress claim); *Wright v. Sparrow*, 381 S.E.2d 503, 505–06 (S.C. Ct. App. 1989) (allegations that a supervisor built a case to justify firing the plaintiff by loading her with responsibility while stripping her of authority and by changing the manner of performing certain duties and then accusing her of not following directions held insufficient as a matter of law to constitute the tort of outrage). Accordingly, the undersigned recommends that the IIED claim be dismissed.

## **CONCLUSION**

For the reasons set forth above, it is **RECOMMENDED** that Santee Cooper's Partial Motion to Dismiss (ECF No. 43) be **GRANTED** and that the claims for Title VII and ADEA hostile work environment, wrongful termination in violation of public policy, negligent supervision, and § 1981 retaliation be DISMISSED.

It is further **RECOMMENDED** that the Fitts Motion to Dismiss (ECF No. 45) and the Remaining Defendants' Motion to Dismiss (ECF No. 44) be **GRANTED, in part, and DENIED,**

**in part**. Specifically, it is recommended that the IIED claim be DISMISSED in its entirety, that the slander claim be DISMISSED as against all Individual Defendants except Defendant Saul, and that the claim for tortious interference should proceed to discovery as against all Individual Defendants.

**IT IS SO RECOMMENDED.**

The parties are referred to the Notice Page attached hereto.

September 6, 2024                         Molly H. Cherry
Charleston, South Carolina               United States Magistrate Judge

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).